UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

K.S.,

               Plaintiff,               Case Number 14-12214

v.                                     Honorable David M. Lawson

DETROIT PUBLIC SCHOOLS,
CHARLES PUGH, ROY ROBERTS,
ROBERT BOBB, BERRY GREER,
and MONIQUE MCMURTRY,

               Defendants.

_____/

## MEMORANDUM ORDER FOR ENTRY OF JUDGMENTS

      The present dispute in this case concerns the terms of a judgment — or judgments — that ought to be entered against the defendants following a settlement and a jury verdict. Plaintiff Khody Sanford brought claims against the several defendants for damages incurred as a result of the sexual misconduct by defendant Charles Pugh to which Sanford was subjected while a student at the Frederick Douglass Academy for Young Men in Detroit. Advancing various legal theories, Sanford accused defendants Detroit Public Schools and district officials Roy Roberts, Robert Bobb, Berry Greer, and Monique McMurtry (the DPS defendants) of maintaining a sexually harassing educational environment and depriving him of educational opportunities. He accused defendant Charles Pugh of inflicting emotional pain, suffering, and distress upon him.

      In his first amended complaint, the plaintiff set out claims against the DPS defendants for violating his rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment via 42 U.S.C. § 1983; sexual harassment and gender discrimination under the Michigan Elliott-Larsen Civil Rights Act (ELCRA); and, against defendant DPS only, "gender harassment" under Title IX of the Education Amendments of 1972. The plaintiff's claims against defendant

Charles Pugh were framed as violations of the Due Process Clause via 42 U.S.C. § 1983; sexual harassment and gender discrimination under ELCRA; assault; battery; and intentional infliction of emotional distress (IIED). The section 1983 claims were dismissed before trial. Trial began on November 3, 2015 on the ELCRA and Title IX claims against the DPS defendants and the ELCRA, assault, battery, and IIED claims against defendant Pugh.

On November 4, 2015, the DPS defendants reached a settlement with the plaintiff and placed the settlement on the record. The terms of the settlement (discussed in more detail below) called for the entry of a consent judgment for the plaintiff in the amount of $350,000, to be paid within a year, which would resolve the ELCRA and Title IX claims against all of the DPS defendants. Trial continued against Pugh, and the Court dismissed the assault claim against him before the case went to the jury. On November 9, 2015, the jury returned a verdict in favor of defendant Pugh on the ELCRA claim, and for the plaintiff on the battery and IIED claims, awarding him damages of $250,000.

The plaintiff and the DPS defendants have not been able to agree on the form of the consent judgment, which prompted the plaintiff to file a motion for its entry. Defendant Pugh contends that the judgment against him should recognize the plaintiff's settlement with the DPS defendants by giving him credit for a setoff in the amount of the settlement, effectively reducing his exposure to $0. The plaintiff contends that he is entitled to a judgment against Pugh in the full amount of the jury's verdict, irrespective of the settlement with the other defendants. The plaintiff and defendant Pugh have submitted briefs on that aspect of the case.

For the reasons discussed below, the Court will enter judgment against the DPS defendants for $350,000, which will require payment by November 1, 2016 as agreed, forestall collection efforts

by the plaintiff until then, and allow the plaintiff to pursue collection remedies against all DPS defendants if the amount is not paid by the agreed deadline. Defendant Pugh is not entitled to set off the settlement amount against the jury verdict because the claims against him are several and not joint (Michigan abolished joint liability in nearly all tort cases in 1995), and a separate judgment will be entered against him. Moreover, the "one recovery rule" will not stand as an obstacle to the plaintiff's collection of the full judgment against Pugh, because the settlement with the DPS defendants compensated the plaintiff for damages that were different in their nature than those for which the jury compensated him.

## I. The DPS Defendants' Settlement

The plaintiff and the DPS defendants agree on the terms of the settlement, except for one important provision. The plaintiff contends that if the $350,000 settlement amount is not paid by the November 1, 2016 deadline, then he may resort to collection remedies against *all* the DPS defendants. The DPS defendants insist that if there is a payment default, then the settlement agreement limits the plaintiff's collection options to enrollment on the public tax rolls of a judgment levy against defendant Detroit Public Schools, and he would forever forego any right to recover against the individual defendants.

As noted above, the settlement was reached on the second day of trial. When the settlement agreement was placed on the record, the following colloquy took place:

> MR. CLEMONS: Your Honor, I have been granted the authority to settle this matter as we discussed in chambers.
>
> THE COURT: Well, the record should reflect that there have been ongoing discussions, but nothing has been finalized as of yet, and the parties have been working since the pretrial conference to see if they could come to a resolution, so far unsuccessfully. And

|  |  |
|---|---|
|  | I take it you have reached an accord with Mr. Seikaly's client and Mr. Seikaly? |
| MR. CLEMONS: | Yes. |
| THE COURT: | Go ahead. |
| MR. CLEMONS: | And with the valued assistance of the Court, we have been able to reach a settlement of this matter. The amount is $350,000. There will be a dismissal with prejudice as to all parties; Detroit Public Schools, Roy Roberts, Robert Bobb, Berry Greer and Monique McMurtry. The settlement will be by way of consent judgment. The consent judgment would be satisfied by a placement on the judgment levy for payment by November 1, 2016. No interest would accrue on the judgment unless the judgment is not paid by November 1, 2016. Defendants admit no liability, however, for the purpose of settling, for capping any additional expenses, any additional costs, any additional potential attorney fees in the event we move forward, we are making the decision to resolve this matter. If not paid by . . . November 1, 2016, then the interest will be future interest only, which would begin on the day after November 1, 2016, and would accrue through the date of payment. There will be no attempt at execution on any of the Defendants of any description; none against the DPS, Robert Bobb, Roy Roberts, Berry Greer or Monique McMurtry. |
| THE COURT: | With the exception of enrolling the judgment according to the statute. |
| MR. CLEMONS: | Yes, your Honor. It will be enrolled according to Michigan statute. Additionally, the consent judgment will include language, specific language stating that the Defendants DPS, Roy Roberts, Robert Bobb, Berry Greer and Monique McMurtry retain and reserve the rights to contest any and all Title IX and Elliott-Larsen claims and elements of those claims in any and all other litigation. |
| THE COURT: | In order words, it's the intent that the consent judgment resolve the dispute between the parties only and not have any preclusive or non-defensive collateral estoppel effects, is that correct? |

| | |
|---|---|
| MR. CLEMONS: | Yes. No collateral estoppel or res judicata effects as to any future — as to any claims, whether present or future. |
| THE COURT: | By anyone else? |
| MR. CLEMONS: | By anyone else. |
| . . . | |
| THE COURT: | All right. I understand that. Is there anything further from you, Mr. Clemons? |
| . . . | |
| MR. CLEMONS: | No, your Honor. |
| THE COURT: | Very well. Mr. Seikaly, do you have anything to add? |
| MR. SEIKALY: | Just a few points, your Honor. One, we're not indemnifying or agreeing to indemnify as to any collateral matters. I just wanted to make sure that's clear. And that we're acting — we're doing this pursuant to a consent judgment. So when he says — this is the issue I really want to make clear. So when he says that we will agree not to collect the judgment — or, I'm sorry — when he says it's a dismissal with prejudice, the with-prejudice dismissal will not occur until we receive the funds. We will not seek to collect, my client agrees to that, but the dismissal with prejudice obviously can't occur until the payment is made. |
| THE COURT: | Correct? |
| MR. CLEMONS: | Yes. And the consent judgment will have language to that effect. |
| THE COURT: | All right. |
| MR. CLEMONS: | But it will be, again, dismissal with prejudice. |

Following the settlement, the parties exchanged drafts of a proposed consent judgment, but they could not agree on whether the plaintiff would have a collection option, other than enrolling the judgment on the tax rolls, if the money was not paid by November 1, 2016. The plaintiff's proposed draft contains the following language:

> Plaintiff shall make no attempt at collection as to any Defendants unless Defendant DPS has failed to pay the full amount of the Consent Judgment ($350,000) on or before November 1, 2016.

The defendants propose the following alternative wording of that provision:

> DPS shall pay this judgment by November 1, 2016. There will be no attempt to execute this judgment on Robert Bobb, Roy Roberts, Berry Greer, or Monique McMurtry.

The defendants also include a paragraph stating that "at the time of payment of the Consent Judgment Plaintiff will execute a release of any and all claims against Defendants, their heirs, employees and agents substantially in the form attached hereto."

District courts "retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). But enforcement is limited to the parties' agreement; a court "is not permitted to alter the terms of the agreement." *Ibid.* Settlement agreements, including those that take the form of consent judgments, are viewed as contracts, and as such are subject to the rules of contract interpretation. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). The prime directive of contract interpretation is to "honor the intent of the parties," *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n.28, 517 N.W.2d 19, 29 n.28 (1994), as it may be discerned from the plain language of the agreement, *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 61, 664 N.W.2d 776, 787 (2003).

If the language of the agreement is unambiguous — that is, it "fairly admits of but one interpretation," *Allstate Ins. Co. v. Goldwater*, 163 Mich. App. 646, 648-49, 415 N.W.2d 2, 4 (1987) — the Court need not look beyond the agreement to find the parties' intent. *Haywood v. Fowler*, 190 Mich. App. 253, 258, 475 N.W.2d 458, 461 (1991). But if the terms are ambiguous — which means that they are susceptible to multiple meanings, *Port Huron Educ. Ass'n MEA/NEA v. Port*

*Huron Area Sch. Dist.*, 452 Mich. 309, 323, 550 N.W.2d 228, 237 (1996) — the Court must look to extrinsic facts along with the terms of the agreement to determine the parties' intentions. *Klapp v. United Ins. Grp. Agency, Inc.* 468 Mich. 459, 463, 663 N.W.2d 447, 454 (2003).

The parties did not sign a written settlement document. Only their on-the-record oral pronouncement exists. The terms spoken by the lawyers are clear and unambiguous on all of the following points. *First*, the parties agreed to a settlement of all of the plaintiff's claims against defendants Detroit Public Schools, Roy Roberts, Robert Bobb, Berry Greer, and Monique McMurtry. *Second*, the plaintiff agreed to dismiss with prejudice all of his claims against those defendants upon receipt of a settlement payment of $350,000. *Third*, the settlement was to be consummated by the entry of a consent judgment. *Fourth*, no interest would accrue on that judgment unless it was not paid by November 1, 2016, and, if it was not paid by that date, then the judgment would begin to accrue future interest only, starting on November 2, 2016 and running through the date of payment in full of the agreed amount. *Fifth*, the settling defendants reserved the right to contest all Title IX and Elliott-Larsen claims and the elements of those claims that might be brought against them by anyone else in any other litigation, and the judgment was deemed by the parties to resolve all claims by and against the settling parties only, with no claim- or issue-preclusive effect on any claims that might be brought by anyone else against them. *Sixth*, the parties agreed that the settlement did not impose any obligation on the plaintiff to indemnify any of the defendants against any claims that might be brought against them by anyone else.

What happens, however, if the judgment is not paid by November 1, 2016? There is a reference to "enrolling the judgment according to the statute." Under Michigan law, if a judgment creditor has an unsatisfied judgment against a school district, the treasurer of the school district must

take steps to certify that judgment to taxing authorities, so that the residents of the district can be assessed. *See* Mich. Comp. Laws § 600.6094(4). That procedure explains how the DPS defendants contemplated raising money to pay the settlement amount, which is the reason the settlement took the form of a "judgment." But it does not provide the *plaintiff* with a collection remedy.

The attorney for the DPS defendants stated on the record that "[t]here will be no attempt at execution on any of the defendants of any description; none against the DPS, Robert Bobb, Roy Roberts, Berry Greer or Monique McMurtry." The DPS defendants now insist that, by assenting to that representation, the plaintiff agreed that there would be no attempt by him to collect the judgment against the individual defendants ever, at any time, under any circumstances, whether DPS honors its obligation to pay the full settlement amount or not. If that were true, then what would be the reason for entry of a *judgment* against those defendants? That construction is nonsensical and at odds with other material representations made by the attorneys for both parties, which were not challenged by either side during the colloquy. The defendants' reading of the record is not consistent either with the plain meaning of the word "judgment," or with the context in which it was used.

There are several reasons for reading the settlement agreement as treating the payment obligation as applying equally to all the DPS defendants, and requiring the plaintiff to forebear from collection efforts until November 1, 2016 — while the DPS defendants raised the money by enrolling the judgment under Mich. Comp. Laws § 600.6094(4) — but not thereafter. *First*, contrary to the defendants' desired interpretation, their attorney did not, at any time, in any context during the hearing, make any assertion indicating that the school district and the individual defendants would be treated in any way differently in the consummation or execution of the agreement. The

defendants agreed that the settlement would be executed "by way of consent judgment." There was no statement by any party that reasonably can be read as indicating that the contemplated judgment would be entered against only some of the DPS defendants and not others. The defendants now attempt to construe the record to indicate that the plaintiff agreed *never* to attempt to collect against the individual defendants, regardless of any success he might have sooner or later in recovering against the school district. But no such distinction was stated on the record, and the language in the record, plainly read, cannot be viewed as making any distinction between the plaintiff's right of recovery against the school district versus the other defendants.

*Second*, the defendants' attorney's statement about the agreement by the plaintiff to forebear from exercising his right to execution was made immediately following, and in the context of, the discussion of the parties' agreement to allow the school district a lengthy time to procure payment in full of the settlement amount. The plaintiff apparently was willing to make that concession because he appreciated that the usual process of statutory enrollment of a judgment against a public entity requires some time to complete. Notwithstanding the plaintiff's agreement to delay execution, there is nothing in the record that indicates that the plaintiff assented to any term by which he could be understood entirely to abandon that right for all time.

Accepting the DPS defendants' interpretation of the settlement agreement would compel the further conclusion that the plaintiff would have no right to execute on the uncollected judgment against *any* defendant, *ever*. But a judgment upon which there can be no execution is no "judgment" at all. That interpretation would undermine the entire agreement to settle the case by entering a "judgment." The procedure for collection on a federal court money judgment is governed generally by "the procedure of the state where the [federal] court is located." Fed. R. Civ. P. 69(a); *Apostolic*

*Pentecostal Church v. Colbert*, 169 F.3d 409, 414 (6th Cir. 1999). It is well established under Michigan law that "[t]he right to execute is implicit in any judgment for money," *Landy v. Landy*, 131 Mich. App. 519, 522, 345 N.W.2d 720, 722 (1984) (citing Mich. Comp. Laws § 600.6001 ("Whenever a judgment is rendered in any court, execution to collect the same may be issued to the sheriff, bailiff, or other proper officer of any county, district, court district or municipality of this state.")), and "[a] judgment creditor is entitled to execution as a matter of right," *Behrens v. Chevrie*, 255 Mich. 79, 80, 237 N.W. 551, 551 (1931).

If the individual defendants desired insulation from the effects of a judgment against them, then they could have insisted that the judgment be confined to the school district, and the case against them would be dismissed. Nothing in the record indicates that the parties agreed to such a concession. To the contrary, the DPS defendants agreed, and they concede that they agreed, to entry of a judgment against *all* of them.

The defendants' attorney recently suggested during a post-trial status conference with the Court that no consent judgment could be entered on the terms proposed by the plaintiff because a consent judgment requires the consent of the parties, and defendants' counsel asserts that he lacked authority from the individual defendants to consent to any settlement that would result in entry of an effective judgment against them. However, counsel of record for all of the DPS defendants outlined the settlement agreement on the record, expressly representing that he had authority to do so. His clients are bound by his representations. *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) ("Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent."). "Thus, unfortunately, [the defendants] are bound by the representations of their counsel as to the formation of the settlement."

-10-

*Tsakanikas v. Nationstar Mortgage, LLC*, No. 12-176, 2013 WL 3155777, at *4 (S.D. Ohio June 20, 2013) (citing *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 718 (6th Cir. 2010) ("In our legal system, litigants are generally bound by the acts and representations of their attorneys.")).

Read in its entirety, the settlement agreement requires all the DPS defendants to be treated the same; they agreed that a judgment would be entered against them for $350,000; no interest would accrue before November 1, 2016; and the plaintiff would not be able to execute on the judgment against any defendant before that date. The Court will enter a judgment incorporating those terms. That judgment conclusively terminates the action as to the DPS defendants. There is no likelihood that further action in this Court would affect the viability of any claim for review of the judgment, and there is no possibility that a reviewing court would have to consider any of these issues a second time. Nor are there any claims that could result in a setoff against this judgment. And, as discussed below, the settlement resolves claims for damages that arise from the DPS's defendants' liability for certain harms that are different from the loss the plaintiff suffered by certain acts committed by defendant Pugh. Therefore, the Court finds no just reason for delay in entering a final judgment confirming the settlement agreement against the DPS defendants. *See* Fed. R. Civ. Pro. 54(b); *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003) (citing *Corrosioneering v. Thyssen Envtl. Sys.*, 807 F.2d 1279, 1282 (6th Cir. 1986)).

### B. Defendant Pugh's Claim for a Setoff

Despite the fact that the plaintiff has received no money yet from his settlement with the DPS defendants, defendant Pugh argues that he is entitled to credit against the verdict for the amount of the settlement the plaintiff reached with the co-defendants. He bases his argument on a common law right of setoff, and contends that the jury award compensated the plaintiff for damages already

-11-

covered by the settlement with the DPS defendants. He acknowledges that this claim may not be ripe yet, because no money has actually changed hands. But he insists that he is entitled to some recognition of the settlement's impact on his obligation under the jury verdict. He also argues that the plaintiff is prohibited from recovering more than once for the same injury, which was determined by the jury to amount to $250,000 in damages.

The plaintiff contends that Michigan abrogated the common law rule of setoff when it abolished joint liability in a batch of laws that has come to be known as "tort reform" legislation in 1995. Therefore, the plaintiff argues, Pugh is not entitled to a setoff based on the settlement with the DPS co-defendants.

These arguments invoke "distinct, but not necessarily incompatible, legal concepts." *StoneMor Operating, LLC v. Bush*, No. 08-631, 2015 WL 5474761, at *3 (W.D. Mich. Sept. 16, 2015). Because joint liability has been abolished in Michigan — at least in the context of this case — and the common law setoff rule has been "abrogated" in cases where joint liability has been abolished, *Herteg v. Somerset Collection GP, Inc.*, No. 227936, 2002 WL 31105000, at *7 (Mich. Ct. App. Sept. 20, 2002), defendant Pugh is not entitled to offset the settlement by his alleged joint tortfeasors against the jury verdict under that theory. On the other hand, Michigan has long honored the fundamental rule that says that "[g]enerally . . . only one recovery is allowed for an injury." *Grace v. Grace*, 253 Mich. App. 357, 368, 655 N.W.2d 595, 602 (2002) (citations omitted). That rule mandates that when "a recovery is obtained for any injury *identical with another in nature, time, and place*, that recovery must be deducted from the plaintiff's other award." *Id.* at 369, 655 N.W.2d at 602 (emphasis added). The setoff rule generally governed the relationship of joint tortfeasors to a plaintiff and to each other and their respective responsibility for the damages that they caused. The

single recovery rule addresses and limits a plaintiff's right to recover for a single injury from multiple sources, regardless whether the defendants are jointly liable.

## A. Setoff Rule

Before the 1995 enactment of its "tort reform" legislation, Michigan operated under a general scheme of "joint and several liability." Under that regime, "where the negligence of two or more persons produce[d] a single, indivisible injury, the tortfeasors [were] jointly and severally liable despite there being no common duty, common design, or concert of action." *Markley v. Oak Health Care Investors of Coldwater, Inc.*, 255 Mich. App. 245, 252, 660 N.W.2d 344, 347 (2003). As a corollary to joint-and-several liability, under the pre-1995 governing statutes and case law, Michigan also generally honored "'the common-law rule that where a negligence action [was] brought against joint tortfeasors, and one alleged tortfeasor agree[d] to settle his potential liability by paying a lump sum in exchange for a release, and a judgment [was] subsequently entered against the non-settling tortfeasor, the judgment [was] reduced *pro tanto* by the settlement amount.'" *Id.* at 250, 660 N.W.2d at 346 (quoting *Thick v. Lapeer Metal Products Co.*, 419 Mich. 342, 349 n.1, 353 N.W.2d 464, 466 n.1 (1984)). Before the 1995 reforms, the statutory provision governing the effect of settlements in tort cases also contained a subsection that codified the common-law rule of setoff, but that provision later was "deleted because the tort reform legislation, for the most part, abolished joint and several liability in favor of allocation of fault or several liability." *Id.* at 254-55, 660 N.W.2d at 349 (citing Mich. Comp. Laws § 600.2925d (1974)).

The 1995 legislation replaced joint and several liability with several liability in most instances, Mich. Comp. Laws § 600.2956, and required the factfinder at trial to allocate the percentage of fault among all those responsible for producing the injury to the plaintiff, "unless

-13-

otherwise agreed by all parties to the action," Mich. Comp. Laws § 600.6304(1). Under that regime, sometimes called "fair share liability," "each tortfeasor only pays the portion of the total damages award that reflects that tortfeasor's percentage of fault." *Bell v. Ren–Pharm, Inc.*, 269 Mich. App. 464, 467, 713 N.W.2d 285, 287 (2006). Eliminating the common law (and theretofore statutory) right of setoff was appropriate, therefore, because there would be "no danger that the plaintiff will be overcompensated for the injury by the failure to set off the amount of another tortfeasor's settlement." *Velez v. Tuma*, 492 Mich. 1, 12, 821 N.W.2d 432, 437 (2012). Joint and several liability — and therefore the setoff rule — remains in a few narrow categories of cases, *see* Mich. Comp. Laws § 600.6304(6) (medical malpractice cases); § 600.6312 (certain criminal acts); *Kaiser v. Allen*, 480 Mich. 31, 36, 746 N.W.2d 92, 94 (2008) (vehicle-owner vicarious-liability cases), but the present case does not fall into any of those categories.

The common-law rule of setoff does not apply in this case for several reasons. *First*, that rule generally has been abrogated in Michigan, as discussed above. This is "an action based on tort or another legal theory seeking damages for personal injury . . . involving fault of more than 1 person." Mich. Comp. Laws § 600.6304(1). Joint liability rules no longer govern; the setoff rule has been abrogated. *Second*, Pugh never asked that the jury be instructed to determine his percentage of fault compared to the other defendants in the case. Instead, he agreed with the instructions given to the jury, which did not include a directive to consider the fault of the settling defendants. He cannot insist now that he should benefit from the fair share liability rule by claiming credit for the full amount to be paid by the settling defendants to absolve him of all liability. *Third*, there could be no liability under the verdict returned by the jury on the battery and IIED claims other than solely and individually against defendant Pugh. In this case, no party ever has alleged, nor was

it ever argued to the jury, that anyone other than Charles Pugh was liable for the strictly intentional and individual conduct described in the battery and IIED counts of the amended complaint. Pugh was the sole defendant named in those counts, and, although the plaintiff alleged that the DPS was vicariously liable for Pugh's conduct under the separate Elliott-Larsen claims, he never made any such allegation as to the state law intentional tort claims, which were the sole basis of the jury's verdict at trial. In this case, the jury returned a verdict in favor of the *defendant* on the only claim to which vicarious liability — and, accordingly, the old rule of common law setoff — could apply. Where the jury found the defendant liable solely on the surviving intentional tort claims that were premised exclusively on his individual, intentional conduct, there simply is no basis for honoring a rule of setoff that applies only in cases where the jury returns a verdict against several defendants deemed to be jointly liable.

### B. One Recovery Rule

That Pugh is not entitled to reduce the judgment against him *pro tanto* by the settlement amount under the setoff rule does not mean that the plaintiff may obtain a double recovery. Instead he may recover only once for an "injury identical with another in nature, time, and place." *Grace*, 253 Mich. App. at 369, 655 N.W.2d at 602. When determining whether the DPS defendants' settlement payment will compensate the plaintiff for the "identical injury" for which the jury returned its verdict, "the nature of the conduct causing the injury and the label attached to the plaintiff's claims are of little relevance." *Chicilo v. Marshall*, 185 Mich. App. 68, 70, 460 N.W.2d 231, 232 (1990). In assessing whether a double recovery would occur, "it is necessary to go beyond the theoretical damages and look at the actual damages sought and proved by plaintiff in the case at bar to determine the extent of the overlap of damages, if any." *Great N. Packaging, Inc. v. Gen.*

*Tire & Rubber Co.*, 154 Mich. App. 777, 785, 399 N.W.2d 408, 412 (1986). The Court "begin[s] by looking at the [damages alleged and sought in the] complaint." *Ibid.* When assessing the nature and extent of the injury for which the jury awarded the plaintiff damages, "[t]he court should consider the verdict form in combination with the jury instructions." *Armstrong v. Shirvell*, 596 F. App'x 433, 450 (6th Cir. 2015).

One illustration of the application of the one recovery rule can be found in *Chicilo v. Marshall*, where the plaintiff recovered compensatory damages in an action under 42 U.S.C. § 1983 for illegal arrest and detention, and later also secured a jury verdict in state court on claims of false arrest and imprisonment. The court of appeals held that emotional trauma that the plaintiff suffered as a result of the deprivation of her civil rights was inseparable from the emotional distress that was caused by the same arrest and imprisonment for which the jury returned a verdict in the state court case. Because "the damage awards received in both the federal court action and the state court action compensate the same injuries, those being injuries to plaintiff's emotional and psychological well-being," the court ordered that the judgment be adjusted to reflect an offset for the federal court damages. 185 Mich. App. at 71, 460 N.W.2d at 232 (1990).

Another example is *Grace v. Grace*, where a woman recovered damages from her ex-husband for fraudulently concealing marital assets. She previously had recovered a settlement in a legal malpractice case against her divorce attorney, whom she accused of failing to uncover those same marital assets in the divorce proceeding. The court of appeals held that the settlement amount properly was set off against the jury verdict in the fraud case, because the "plaintiff has sought to recover damages for an injury identical in nature, time, and place against both defendant and her divorce attorney." 253 Mich. App. at 369, 655 N.W.2d at 603.

According to the amended complaint in this case, the plaintiff sought recovery from both Pugh and the DPS defendants on the ELCRA claim for "emotional, psychological, and physical injuries, and the permanent and serious impairment of plaintiff's academic and social development." On the Title IX claim against the DPS only, the plaintiff's damages claim was based on "physical injuries, mental and emotional distress, pain, grief and anguish, medical expenses and the loss of earning capacity, all past, present, and future." He also sought damages against Pugh alone on the battery claim for "emotional, psychological, and physical injuries, and the permanent and serious impairment of plaintiff's academic and social development" and on the IIED claim for "severe emotional distress to plaintiff." There is considerable overlap in the nature of the damages requested against the DPS defendants and against Pugh in the amended complaint. However, those damages are not identical.

The settlement with the DPS defendants, as described on the record, was meant to cover the plaintiff's claim for damages — which included loss of earning capacity — plus attorney's fees, for which the DPS defendants could be liable under Title IX, *see* 42 U.S.C. § 1998(b), and ELCRA, *see* Mich. Comp. Laws § 37.2802. The jury verdict addressed only the plaintiff's damages for emotional distress or emotional suffering, which was limited by the jury instructions to "mental anguish[] and . . . embarrassment, humiliation, or mortification." Because the jury returned a verdict in Pugh's favor on the ELCRA claim, the plaintiff cannot recover attorney's fees against him. There was no economic component in the verdict, such as the loss of earning capacity, which was included in the settlement with the DPS defendants. It can fairly be said that the DPS defendants' settlement was meant to compensate the plaintiff for a certain measure of emotional suffering. But despite some overlap, there is a distinct identity in the damages awarded by the jury and the amount to be paid by

the school district.  Therefore, requiring defendant Pugh to pay the full judgment would not offend the one recovery rule.

On another level, allowing Pugh a *pro tanto* reduction of his liability to the plaintiff based on the DPS defendants' settlement would not do substantial justice.  It has been observed that the one recovery rule was intended to prevent unjust enrichment to a plaintiff by preventing overcompensation, although those "financial and judicial economy policies . . . appear to convey more solicitude towards fairness to the nonsettling tortfeasor than to the injured party." *Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239, 260 (S.D.N.Y. 2001).  But "[t]he law contains no rigid rule against overcompensation." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 219 (1994).  And "[s]everal doctrines . . . recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *Ibid.*  As one court noted:

> The one-compensation rule, grounded in unjust enrichment, is not to be applied in such a way as to generate unjust enrichment to the only litigating defendant. . . . It would be unjust enrichment . . . to give the only defendant who was eventually found liable . . . a full *pro tanto* credit for the full amount paid by the others.

*Rose v. Associated Anesthesiologists*, 501 F.2d 806, 809 (D.C. Cir. 1974).  This is particularly true where the conduct by defendant Pugh amounted to *intentional* torts that caused the damages that the jury found, and set in motion the chain of events that prompted the settlement — funded by the taxpayers — by the other defendants.

Defendant Pugh is not entitled to any setoff or credit against his liability to the plaintiff based on the settlement by the DPS defendants.

### III.

For the reasons stated, the Court will enter a consent judgment in favor of the plaintiff and against the DPS defendants that incorporates the terms described in this order.  That judgment will

be final as to those parties under Rule 54(b). The Court also will enter judgment against defendant Charles Pugh in the amount of the jury's verdict.

Accordingly, it is **ORDERED** that the plaintiff's motion for entry of consent judgment [dkt. #168] is **GRANTED**. Final judgment will enter against defendants Detroit Public Schools and district officials Roy Roberts, Robert Bobb, Berry Greer, and Monique McMurtry under Federal Rule of Civil Procedure 54(b).

It is further **ORDERED** that judgment will enter against defendant Charles Pugh on the jury verdict.

>       s/David M. Lawson
>       DAVID M. LAWSON
>       United States District Judge

Dated: December 21, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 21, 2015.

>       s/Susan Pinkowski
>       SUSAN PINKOWSKI

---